UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

EDDIE ROBLES                    :
                                :         PRISONER
        v.                      :  Case No.  3:03CV1634 (DFM)
                                :
JOHN ARMSTRONG, et al.          :

RULING ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

The plaintiff, Eddie Robles, has filed this civil rights action pro se and in forma pauperis pursuant to 28 U.S.C. § 1915 against Former Commissioner of Correction John Armstrong, Warden Brian K. Murphy, Nurse Barbara LaFrance and Dr. Tatyana Katsnelson.[1]  He alleges inter alia that defendants LaFrance and Katsnelson failed to inform him of his elevated liver function tests in January 2002 and the possibility that he was infected with Hepatitis C.  Pending is a motion for summary judgment filed by the defendants.  For the reasons that follow, the motion for summary judgment is granted.

---

[1] John Armstrong, Brian K. Murphy, Barbara LaFrance and Tatyana Katsnelson are the only defendants named in the caption of the amended complaint.  The plaintiff refers to John Doe/Jane Doe of the Correctional Managed Health Care Program and John Doe/Jane Doe Members of the Revitalization Committee in the body of the amended complaint.  Rule 10(a) of the Federal Rules of Civil Procedure requires that all defendants be listed in the caption of the complaint.  Because the John and Jane Does are not listed in the caption of the amended complaint, they are not defendants and the court does not consider claims against them.  However, even if the plaintiff had included the John/Jane Does in the caption of the complaint, he never identified them by name or served them with the complaint.  Thus, any claims against them would be subject to dismissal pursuant to Rule 4(m), Fed. R. Civ. P.

I.   Standard of Review

In a motion for summary judgment, the burden is on the moving party to establish that there are no genuine issues of material fact in dispute and that it is entitled to judgment as a matter of law.  See Rule 56(c), Fed. R. Civ. P.; Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986); White v. ABCO Engineering Corp., 221 F.3d 293, 300 (2d Cir. 2000).  A court must grant summary judgment "'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact . . . .'"  Miner v. Glen Falls, 999 F.2d 655, 661 (2d Cir. 1993) (citation omitted).  A dispute regarding a material fact is genuine "'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" Aldrich v. Randolph Cent. Sch. Dist., 963 F.2d 520, 523 (2d Cir.) (quoting Anderson, 477 U.S. at 248), cert. denied, 506 U.S. 965 (1992).  After discovery, if the nonmoving party "has failed to make a sufficient showing on an essential element of [its] case with respect to which [it] has the burden of proof," then summary judgment is appropriate.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

When a motion for summary judgment is supported by documentary evidence and sworn affidavits, the nonmoving party "may not rest upon the mere allegations or denials of the adverse

party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); see also Anderson, 477 U.S. at 256.  The nonmoving party must present "significant probative evidence to create a genuine issue of material fact." Soto v. Meachum, Civ. No. B-90-270 (WWE), 1991 WL 218481, at *6 (D. Conn. Aug. 28, 1991).  A party may not rely "on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment."  Knight v. U.S. Fire Ins. Co., 804 F.2d 9, 12 (2d Cir. 1986), cert. denied, 480 U.S. 932 (1987).

    The court resolves "all ambiguities and draw[s] all inferences in favor of the nonmoving party in order to determine how a reasonable jury would decide."  Aldrich, 963 F.2d at 523.  Thus, "[o]nly when reasonable minds could not differ as to the import of the evidence is summary judgment proper."  Bryant v. Maffucci, 923 F.2d 979, 982 (2d Cir.), cert. denied, 502 U.S. 849 (1991).  See also Suburban Propane v. Proctor Gas, Inc., 953 F.2d 780, 788 (2d Cir. 1992).  A party may not create a genuine issue of material fact by presenting contradictory or unsupported statements.  See Securities & Exchange Comm'n v. Research Automation Corp., 585 F.2d 31, 33 (2d Cir. 1978).  Nor may he rest on the "mere allegations or denials" contained in his pleadings.  Goenaga v. March of Dimes Birth Defects Found., 51

F.3d 14, 18 (2d Cir. 1995). See also Ying Jing Gan v. City of New York, 996 F.2d 522, 532 (2d Cir. 1993) (holding that party may not rely on conclusory statements or an argument that the affidavits in support of the motion for summary judgment are not credible).

Where one party is proceeding pro se, the court reads the pro se party's papers liberally and interprets them to raise the strongest arguments suggested therein. See Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir. 1994). Despite this liberal interpretation, however, a "bald assertion" unsupported by evidence, cannot overcome a properly supported motion for summary judgment. Carey v. Crescenzi, 923 F.2d 18, 21 (2d Cir. 1991).

II. Facts[2]

Dr. Tatyana Katsnelson is a physician licensed to practice medicine in the State of Connecticut. In 2002, she was employed part-time with the Correctional Managed Health Care Program and

---

[2] The facts are taken from defendants' Local Rule 56(a)1 Statement [doc. #20-2] and the Affidavits of Dr. Edward Blanchette [doc. # 20-3], the Affidavit of Dr. Tatyana Katsnelson [doc. # 20-4] and the Affidavit of Barbara LaFrance [doc. # 20-5]. The defendants filed their motion for summary judgment on June 14, 2005. On June 21, 2005, the court provided the plaintiff with notice of his obligation to respond to the motion and of the contents of a proper response. The plaintiff has failed to respond to the motion. Because the plaintiff has not responded with evidence or submitted a Local Rule 56(a)2 Statement, defendants' facts are deemed admitted. See D. Conn. L. Civ. R. 56(a)1 ("All material facts set forth in said statement will be deemed admitted unless controverted by the statement required to be served by the opposing party in accordance with Rule 56(a)2.")

4

assigned to Walker Correctional Institution ("Walker") in Suffield, Connecticut.

Barbara LaFrance is an Advanced Practice Registered Nurse licensed to practice in the State of Connecticut.  She was employed with the Correctional Managed Health Care Program and assigned to Walker from July 1998 through March 2004.

Dr. Edward Blanchette has been licensed to practice medicine in the State of Connecticut since 1975 and is board certified in Internal Medicine and Infectious Diseases.  In 1984, Dr. Blanchette began working for the State of Connecticut Department of Correction and has held various medical positions within the Department since then.  He is currently the Director of Clinical and Professional Services for the Department of Correction.

Brian Murphy is currently the Deputy Commissioner of the Operations Division of the Department of Correction.  Between May 2001 and April 2003, he was employed as the Lead Warden at the MacDougall-Walker Correctional Complex in Suffield, Connecticut.  Defendant Murphy had no written or verbal contact with the plaintiff and was not involved in any medical treatment provided to him during his incarceration in either MacDougall Correctional Institution ("MacDougall") or Walker during the months from January to March 2002.

On December 26, 2001, the plaintiff was re-admitted to the Department of Correction and confined to the New Haven

Correctional Center after having been released on bond in April 2001.  On January 7, 2002, prison officials transferred the plaintiff to Walker.  Upon plaintiff's admission to Walker, a nurse noted plaintiff's prior drug use and that the medical personnel at New Haven Correctional Center had prescribed the plaintiff Zantac and Maalox Plus to be taken on a daily basis.  The plaintiff reported no complaints.

On January 17, 2002, the plaintiff underwent routine blood tests which revealed elevated liver enzyme levels.  The elevated enzyme levels could have been attributed to a number of factors such as prior alcohol or drug abuse or the ingestion of the medication the plaintiff had been prescribed at New Haven Correctional Center.

On January 22, 2002, Dr. Katsnelson examined the plaintiff to determine the cause of his stomach pain.  Dr. Katsnelson noted that the plaintiff had a history of peptic ulcer disease.  Dr. Katsnelson re-ordered Zantac and Maalox for the plaintiff, ordered a H Pylori titer test to determine whether the plaintiff had bacteria that might be the cause of an ulcer and issued a new order for routine blood work because the first blood work results had not yet been forwarded to the prison from the lab.  The plaintiff's test results were positive for H. Pylori infection.

On February 14, 2002, the plaintiff was examined by Nurse LaFrance.  The plaintiff reported that he was experiencing less

pain in his stomach.  Nurse LaFrance discussed with the plaintiff the option of treating the H Pylori infection with antibiotics.  The plaintiff agreed to start the antibiotic treatment.

In 2002, the Correctional Managed Health Care Program followed guidelines recommended by the National Institute for Health in managing and treating chronic Hepatitis C.  To determine whether an inmate who had tested positive for Hepatitis C was a candidate for Hepatitis C therapy, medical personnel were required to perform two or more liver enzyme tests spaced at least six months or more apart.

The results of the second round of blood work revealed elevated liver enzyme levels, but lower levels than the results of the first round of blood work.  Less than two months after the plaintiff's arrival at Walker, on March 4, 2002, prison officials transferred the plaintiff to MacDougall.  Neither Nurse LaFrance nor Dr. Katsnelson had any contact with the plaintiff after March 4, 2002.  On March 14, 2002, prison officials transferred the plaintiff to the Corrigan Correctional Institution.

On April 14, 2003, the plaintiff was incarcerated at Cheshire Correctional Institution ("Cheshire").  He complained about his cellmate who had tested positive for Hepatitis C.  Lab tests performed that same day revealed that the plaintiff was positive for Hepatitis C.  In August 2003, a physician at Cheshire completed initial paperwork to permit the plaintiff to

complete a diagnostic evaluation to determine his eligibility for Hepatitis C therapy. On March 24, 2004, the Hepatitis C Utilization Review Board ("Hep CURB") approved the plaintiff for a liver biopsy. The liver biopsy performed in April 2004 showed very mild liver disease. On May 12, 2004, Hep CURB approved the plaintiff for Hepatitis C Therapy.

III. Discussion

The defendants raise three grounds in support of their motion for summary judgment. They argue that (1) the Eleventh Amendment bars any claims for monetary damages against them in their official capacities; (2) they were not deliberately indifferent to plaintiff's medical needs; (3) the court should not exercise supplemental jurisdiction over any state law claims and (4) they are entitled to qualified immunity.

    A. Claims Barred By Eleventh Amendment

The plaintiff names the defendants in their individual and official capacities. The defendants contend that the Eleventh Amendment bars a damage award against the defendants in their official capacities.

Generally, a suit for recovery of money may not be maintained against the state itself, or against any agency or department of the state, unless the state has waived its sovereign immunity under the Eleventh Amendment. See Florida Dep't of State v. Treasure Salvors, 458 U.S. 670, 684 (1982).

Section 1983 does not override a state's Eleventh Amendment immunity.  See Quern v. Jordan, 440 U.S. 332, 342 (1979).  The Eleventh Amendment immunity which protects the state from suits for monetary relief also protects state officials sued for damages in their official capacity.  See Kentucky v. Graham, 473 U.S. 159 (1985).  A suit against a defendant in his official capacity is ultimately a suit against the state if any recovery would be expended from the public treasury.  See Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 101 n.11 (1984).

The plaintiff's claims for monetary damages against the defendants in their official capacities are barred by the Eleventh Amendment.  Defendants' motion for summary judgment is granted as to all claims for damages against the defendants in their official capacities.

    B.    <u>Failure to State a Claim of Deliberate Indifference to Medical Needs</u>

The defendants argue that the plaintiff did not suffer from a serious medical need as a result of the alleged failure of Dr. Katsnelson and Nurse LaFrance to refer him for a Hepatitis C evaluation in January 2002.  They also contend that even if plaintiff's condition was serious, they were not deliberately indifferent to that condition.

The Eighth Amendment protects inmates from deliberate indifference by prison officials to their serious medical needs.  See Estelle v. Gamble, 429 U.S. 97, 104 (1976).  To prevail on

9

such a claim, the plaintiff must allege "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." Id. at 106.  A prisoner must show intent to either deny or unreasonably delay access to needed medical care or the wanton infliction of unnecessary pain by prison personnel.  See id. at 104-05.  Mere negligence will not support a section 1983 claim; the conduct complained of must "shock the conscience" or constitute a "barbarous act."  McCloud v. Delaney, 677 F. Supp. 230, 232 (S.D.N.Y. 1988) (citing United States ex rel. Hyde v. McGinnis, 429 F.2d 864 (2d Cir. 1970)).  A treating physician will be liable under the Eighth Amendment only if his conduct is "repugnant to the conscience of mankind."  Tomarkin v. Ward, 534 F. Supp. 1224, 1230 (S.D.N.Y. 1982) (quoting Estelle, 429 U.S. at 105-06).

    The civil rights statute was not meant to redress medical malpractice claims that can be adequately resolved under state tort law.  Tomarkin, 534 F. Supp. at 1230-31.  Thus, a claim of misdiagnosis, faulty judgment, or malpractice without more to indicate deliberate indifference, is not cognizable under section 1983.  See McCabe v. Nassau County Medical Center, 453 F.2d 698, 704 (2d Cir. 1971); Tomarkin v. Ward, 534 F. Supp. 1224, 1230 (S.D.N.Y. 1982).  In addition, mere disagreement with prison officials about what constitutes appropriate medical care does not state a claim cognizable under the Eighth Amendment.  See

10

Hyde v. Mcinnis, 429 F.2d 864, 868 (2d Cir. 1970); Corby v. Conboy, 457 F.2d 251, 254 (2d Cir. 1972); Ross v. Kelly, 784 F. Supp. 35, 44 (W.D.N.Y.), aff'd, 970 F.2d 896 (2d Cir.), cert. denied, 506 U.S. 1040 (1992).

There are both subjective and objective components to the deliberate indifference standard. See Hathaway v. Coughlin, 37 F.3d 63, 66 (2d Cir. 1994), cert. denied sub nom. Foote v. Hathaway, 513 U.S. 1154 (1995). The alleged deprivation must be "sufficiently serious" in objective terms. Wilson v. Seiter, 501 U.S. 294, 298 (1991). Thus, "a prisoner must first make [a] threshold showing of serious illness or injury in order to state an Eighth Amendment claim for denial of medical care." Smith v. Carpenter, 316 F.3d 178, 184 (2d Cir. 2003)(quoting Hudson v. McMillian, 503 U.S. 1, 9 (1992)). See also Nance v. Kelly, 912 F.2d 605, 607 (2d Cir. 1990) (Pratt, J., dissenting) ("'serious medical need' requirement contemplates a condition of urgency, one that may produce death, degeneration, or extreme pain"). The Second Circuit has identified several factors that are highly relevant to the inquiry into the seriousness of a medical condition: "'[t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain.'" Chance v. Armstrong, 143 F.3d

698, 702 (2d. Cir. 1998) (citation omitted).  In addition, where the denial of treatment causes plaintiff to suffer a permanent loss or life-long handicap, the medical need is considered serious.  See Harrison v. Barkley, 219 F.3d 132, 136 (2d Cir. 2000).

In addition to demonstrating a serious medical need to satisfy the objective component of the deliberate indifference standard, an inmate also must present evidence that, subjectively, the charged prison official acted with "a sufficiently culpable state of mind."  Hathaway, 37 F.3d at 66. "[A] prison official does not act in a deliberately indifferent manner unless that official 'knows and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'"  Id. (quoting Farmer v. Brennan, 511 U.S. 825, 837 (1994)).

The defendants first argue that the plaintiff did not suffer from a serious medical need or condition during the time period that he was incarcerated at Walker from January 7, 2002 to March 4, 2002.  There is no evidence in plaintiff's medical records that medical personnel diagnosed him as suffering from Hepatitis C at any time during this period.  The plaintiff did not test positive for Hepatitis C until April 2003.  Routine blood tests

performed on January 17, 2002, showed that the plaintiff's AST and ALT liver enzyme levels were higher than the normal range. On January 24, 2002, routine blood tests revealed elevated AST and ALT liver enzyme levels, but those levels were lower than the levels measured on January 17, 2002.  The medical records reveal no comments by a physician or nurse concerning the plaintiff's elevated liver enzyme levels.  The only complaints by the plaintiff during the time period in question related to a sore throat and pain in his stomach due to an ulcer.  The plaintiff has failed to submit any evidence to suggest that he suffered from a serious medical condition during his incarceration at Walker from January 7, 2002 to March 4, 2002 or at MacDougall from March 4, 2002 to March 14, 2002.

Even if the plaintiff could prove that he suffered from Hepatitis C during the period in question, he would not have been a candidate for treatment under the Correctional Managed Health Care Program Guidelines in effect at that time.  In 2002, the Correctional Managed Health Care Program followed guidelines recommended by the National Institute for Health in managing and treating chronic Hepatitis C.  To determine whether an inmate who had tested positive for Hepatitis C was a candidate for Hepatitis C therapy, medical personnel were required to perform two or more liver enzyme tests spaced at least six months or more apart.  The plaintiff was incarcerated at Walker for less than two months and

MacDougall for less than two weeks. Thus, there was no basis for the defendants to refer the plaintiff for evaluation and treatment of Hepatitis C during those time periods.

The plaintiff has not met his burden of demonstrating that there are genuine issues of material fact as to whether he suffered from a serious medical condition during his incarceration at Walker, when blood tests performed in January 2002 revealed elevated liver enzyme levels. Thus, the plaintiff has failed to state a claim of deliberate indifference to a serious medical need. The defendants' motion for summary judgment is granted as to all federal claims against the defendants.

## C.   State Law Claims

The defendants argue that the court should decline to exercise jurisdiction over plaintiff's state law claims. The plaintiff asserts claims that in June 2003, the defendants denied his requests for copies of recent laboratory reports in violation of Connecticut General Statutes § 4-193. The plaintiff also claims that the defendants violated Connecticut General Statutes § 19a-103 when they failed to treat him for Hepatitis C.

Supplemental or pendent jurisdiction is a matter of discretion, not of right. See United Mine Workers v. Gibbs, 383 U.S. 715, 715-26 (1966). Where all federal claims have been dismissed before trial, pendent state claims should be dismissed

without prejudice and left for resolution by the state courts. See 28 U.S.C. § 1367(c)(3); Giordano v. City of New York, 274 F.3d 740, 754 (2d Cir. 2001) (collecting cases).  Because the court has dismissed all federal law claims, it declines to exercise supplemental jurisdiction over the plaintiff's state law claims.

IV.  Conclusion

The Motion for Summary Judgment [**Doc. # 20**] is **GRANTED**. The court declines to exercise supplemental jurisdiction over plaintiff's state law claims.  The Clerk is directed to close this case.

This is **not** a recommended ruling.  The parties have consented to the exercise of jurisdiction by a magistrate judge and the case was transferred to the undersigned for all purposes on March 1, 2005.  (See Doc. # 18.)

SO ORDERED this 17th day of March, 2006, at Hartford, Connecticut.

/s/ Donna F. Martinez

Donna F. Martinez
United States Magistrate Judge

15